[Cite as *In re S.I.G.*, 2023-Ohio-2912.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| S.I.G. | : | CASE NO. CA2023-02-003 |
| | : | O P I N I O N<br>8/21/2023 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20202101

Brian T. Goldberg, for appellant.

Zachary A. Corbin, Brown County Prosecuting Attorney, and Courtney A Worley, Assistant Prosecuting Attorney, for appellee.

**HENDRICKSON, J.**

{¶ 1} Appellant, S.I.G., appeals from the judgment of the Brown County Court of Common Pleas, Juvenile Division, which invoked the stayed adult portion of his Serious Youthful Offender ("SYO") sentence.

{¶ 2} On September 10, 2020, after communicating with one another via Snapchat, a social media platform, 17-year-old S.I.G. picked up 12-year-old R.C. and took her to his

home where he sexually assaulted and vaginally raped her. S.I.G. later dropped R.C. off in a wooded area without any shoes, pants, or shorts. R.C. believed that S.I.G. had drugged her before the sexual assault.

{¶ 3} On October 27, 2020, a delinquency complaint was filed in the Brown County Juvenile Court charging S.I.G. with two counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree if committed by an adult, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult. Each count alleged that the victim was less than 13 years old. On November 19, 2020, S.I.G. was indicted by the Brown County Grand Jury for the same offenses. He was reindicted on the same offenses by the Brown County Grand Jury on December 22, 2020, though the later indictment included SYO specifications on each count.

{¶ 4} On March 31, 2021, S.I.G. entered an admission in the juvenile court to a single count of rape and the accompanying SYO specification. The remaining charges and specifications were dismissed. On April 5, 2021, following a dispositional hearing, S.I.G. was sentenced to an adult prison term of 10 years to life in prison, with this sentence stayed pending successful completion of his juvenile disposition. For his juvenile disposition, S.I.G. was "committed to the legal custody of the Ohio Department of Youth Services [DYS] for a minimum period of one (1) year, to a maximum of the attainment of the age of twenty-one (21), which shall be suspended, with the juvenile being placed on probation until attainment of twenty-one years of age." The terms of S.I.G.'s probation included that he have no contact with R.C. or her family, that he be "committed to the Butler County Juvenile Rehabilitation Center [BCJRC] for mandatory sex offender rehabilitation for an indefinite time period until successful completion of rehabilitation was achieved," that he refrain from using drugs, and that he "have no access to social media of any nature for two years commencing upon release from Butler County Juvenile Rehabilitation Center, except as

required for employment or higher education assignments." S.I.G. did not appeal any aspect of his adjudication or disposition. He completed his treatment at BCJRC and was discharged on October 5, 2021.

{¶ 5} On September 1, 2022, S.I.G.'s probation officer, Timothy Boone, filed a probation violation against S.I.G., alleging that S.I.G. had failed to follow the terms of his probation by testing positive for THC and cocaine and by posting a photograph of himself on Tinder, a social media dating app. The photograph contained the caption, "[j]ust tryna smoke a pipe and lay the pipe," which Boone interpreted to mean that S.I.G. wanted to smoke marijuana and have sex. Boone had S.I.G. report to the probation department so he could discuss the photograph and administer a drug screen. Prior to taking the drug screen, S.I.G. admitted he would test positive for THC. S.I.G.'s urine screen tested positive for both THC and cocaine. When Boone asked S.I.G. about the positive cocaine test result, S.I.G. hung his head, began to cry, and admitted he used cocaine as a coping mechanism after a recent breakup with his girlfriend.

{¶ 6} S.I.G. was arrested on September 1, 2022 and his vehicle was searched. A number of questionable items were found in S.I.G.'s vehicle by Boone and by Andrew Baughey, an Intake and Diversion Officer for the Brown County Juvenile Court. Synthetic urine and a bottle of "Clear Eyes" were found in the vehicle, which Boone and Baughey explained were used, respectively, to mask the results of a drug screen and to alleviate bloodshot eyes after using marijuana. An unopened pack of Swisher Sweet Cigarillos, which are often altered and used to smoke marijuana cigarettes, and empty BIC pen tubes, which can be used to snort illegal powdery substances, were also found in S.I.G.'s vehicle.

{¶ 7} On October 7, 2022, the state moved to invoke the adult portion of S.I.G.'s SYO sentence. In addition to violating the terms of his probation by using social media and testing positive for THC and cocaine, wherein use of the latter drug would constitute a felony

if committed by an adult, the state also alleged S.I.G. had engaged in conduct that created a substantial risk to the safety and security of R.C. Specifically, the state alleged that S.I.G. had violated the court's no contact order when he encountered R.C. at a local restaurant and refused to leave.

{¶ 8} A hearing on the state's motion was held on October 18, 2022. The state presented testimony from Boone, Baughey, R.C.'s great-grandmother, and Brandi Brewer, the owner and operator of Fastest Labs North Cincinnati. At the conclusion of the hearing, the juvenile court found that S.I.G. had "returned to the same behavior which facilitated the rape charge and conviction, namely returning to abuse of illegal substances, adding cocaine to the equation, as well as prohibited use of the internet to suggest and solicit sexual interactions with no indication or restriction that only persons of legal age consent, respond/reply." The court noted that S.I.G.'s admitted use and positive test result for cocaine demonstrated he engaged in conduct which could have been charged as a fifth-degree felony offense pursuant to R.C. 2925.11(A)(1)(a), possession of drugs. Given the evidence before it, the court found by clear and convincing evidence that the requirements of R.C. 2152.14(E) had been met and it invoked S.I.G.'s adult sentence.

{¶ 9} Following a presentence investigation, a sentencing hearing was held on January 12, 2023. At that time, the juvenile court found that S.I.G. was not amenable to available juvenile or adult community control sanctions, was unlikely to be rehabilitated during the remaining portion of juvenile disposition, and imposed an indefinite mandatory prison term of 10 years to life in the Ohio Department of Rehabilitations and Corrections. A sentencing entry was filed by the court on February 7, 2023.

{¶ 10} S.I.G. timely appealed the invocation of his adult sentence, raising four assignments of error for review. We find our resolution of the first assignment of error is dispositive of the appeal and moot the remaining assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT LACKED STATUTORY AUTHORITY TO IMPOSE THE ADULT PORTION OF THE SERIOUS YOUTHFUL OFFENDER SENTENCE.

{¶ 13} In his first assignment of error, S.I.G. argues the juvenile court erred in invoking the adult portion of his SYO sentence as the requirements of R.C. 2152.14(E) were not met. Specifically, S.I.G. argues that the court could not impose the adult sentence as he had not been admitted to a DYS facility and did not have criminal charges pending against him.

{¶ 14} R.C. 2152.14 governs the requirements for invoking the adult portion of a SYO dispositional sentence. If a motion is filed to invoke the adult portion of a SYO sentence, the juvenile court must hold a hearing on the motion before it can invoke the adult sentence. R.C. 2152.14(D). Thereafter, pursuant to R.C. 2152.14(E)(1),

> [t]he juvenile court may invoke the adult portion of a person's serious youthful offender dispositional sentence if the juvenile court finds all of the following on the record by clear and convincing evidence:
>
> (a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.
>
> (b) The person is at least fourteen years of age *and has been admitted to a department of youth services facility*, or criminal charges are pending against the person.
>
> (c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

(Emphasis added.) The conduct that can result in the enforcement of an adult sentence includes committing, while in custody, on parole from a DYS facility, or on community control, an act that is a violation of the rules of the institution or the conditions of supervision and that could be charged as any felony or as a first degree misdemeanor offense if

committed by an adult; R.C. 2152.14(A)(2)(a) and (B)(1); or by engaging in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim.  R.C. 2152.14(A)(2)(b) and (B)(2).

{¶ 15} The dispute in the present case centers around whether S.I.G., who was more than 14 years old and did not have criminal charges pending against him, had been admitted to a "DYS facility" as contemplated by R.C. 2152.14(E)(1)(b).  The juvenile court found that the BCJRC was a "DYS facility," stating at sentencing that "the sister agency of the Butler – of the Department of Youth Services [was] Butler County Rehabilitation [Center] in the sense for those that are sex offenders."  S.I.G., however, maintains that BCJRC is not a DYS facility.  He notes that when he was sentenced in April 2021, the juvenile court suspended his commitment to DYS and placed him on probation, with one of the terms of his probation being that he complete sex offender rehabilitation at BCJRC, a community corrections facility (CCF).

{¶ 16} As defined by R.C. 2152.02(B), "'[a]dmitted to a department of youth services facility' includes *admission to a facility operated, or contracted for, by the department* and admission to a comparable facility outside this state by another state or the United States." (Emphasis added.)   "Unless the context requires a different meaning, 'community corrections facility' means a county or multicounty rehabilitation center for felony delinquents who have been committed to the department of youth services and *diverted from care and custody in an institution* and placed in the rehabilitation center pursuant to division (E) of section 5139.36."  R.C. 5139.01(A)(14).  (Emphasis added.)  See also R.C. 2152.02(D) and Ohio Adm.Code 5139-36-01(K).

{¶ 17} A juvenile's placement in a CCF occurs in one of three ways.  First, a juvenile court associated with the CCF may commit a child to the CCF as a community control condition.  *See* R.C. 2152.19(A)(4).  Second, DYS may refer a child committed to its custody

for placement in a CCF, subject to the consent of the committing juvenile court.  *See* R.C. 5139.36(E)(2)(a).  In such case, the child "shall remain in the legal custody of the department of youth services during the period in which the child is in the community corrections facility."  R.C. 5139.36(E)(2).  Third, a child may also be referred for placement in a CCF by counties that are not associated with the CCF with the consent of the CCF. R.C. 5139.36(E)(3).

{¶ 18} Community corrections facilities receive grant funding from DYS.  See R.C. 5139.36(A).  However, DYS is not involved in the day-to-day operation of a CCF, and DYS's authority is limited to monitoring compliance with the stipulations of the grant, providing technical assistance, and evaluating the effectiveness of a CCF in meeting its goals and objectives.  *See* Ohio Adm.Code 5139-36-02.  CCFs are administered by a governing board, which in a multi-county CCF, consists of juvenile judges of each participating county. Ohio Adm.Code 5139-36-03.  The governing board appoints facility and program personnel and sets their salaries.  *Id.*  The appointed director controls, manages, operates, and has general charge of the CCF.  *Id.*  The statutes and regulations discussed above, therefore, do not indicate that a CCF is a DYS facility.

{¶ 19} The Ohio Department of Youth Services website provides further support that BCJRC is not a DYS facility.  The website does not identify BCJRC as a DYS facility; rather, only Indian River JCF, Circleville JCF, and Cuyahoga Hills JCF are identified as DYS state-operated juvenile correctional facilities.  *See* Ohio Department of Youth Services, Our Facilities, https://dys.ohio.gov/facilities (accessed Aug. 15, 2023).  The website identifies 11 CCFs that are a "dispositional alternative" to a DYS facility.  *See* Ohio Department of Youth Services, Community Corrections Facilities, https://dys.ohio.gov/courts-and-community/community-corrections-facilities (accessed Aug. 15, 2023).  BCJRC, one of the CCFs, is identified as a rehabilitation center serving multiple counties and offering, among

other things, a "Specialized Sexual Offender Program." See Ohio Department of Youth Services, Butler County Juvenile Rehabilitation Center, https://dys.ohio.gov/courts-and-community/community-corrections-facilities/butler-county-juvenile-rehabilitation-center (accessed Aug. 15, 2023).

{¶ 20} Our determination that a CCF is not a "DYS facility" is supported by case law from the Third District Court of Appeals. *See In re N.G.*, 3d Dist. Hancock No. 5-13-35, 2014-Ohio-3190. In *In re N.G.*, the Third District was asked to determine whether a juvenile had been "admitted to a department of youth services facility" for purposes of enforcement of a SYO sentence under R.C. 2142.14(E). There, the juvenile, N.G., had been found delinquent of seven counts of rape with SYO specifications. *Id.* at ¶ 2. The juvenile court imposed an adult sentence of 20 years to life in prison, and stayed the sentence pending successful completion of N.G.'s juvenile sentence. *Id.* For N.G.'s juvenile sentence, the court committed N.G. to DYS for an indefinite term consisting of a minimum of one year for each count of rape to be served consecutively and a maximum period not to exceed the child's attainment of age 21. *Id.* However, the court suspended N.G.'s commitment to DYS and admitted him to a treatment program at the Juvenile Residential Center of Northwest Ohio (JRC), a CCF. *Id.*

{¶ 21} After completing the program at JRC, N.G. was put on probation. *Id.* at ¶ 3. He violated his probation, and the juvenile court invoked the adult portion of his sentence and sent him to prison. *Id.* at ¶ 4. In invoking the adult portion of N.G.'s sentence, the juvenile court found that N.G.'s admission to the JRC was an admission to a DYS facility. *Id.* N.G. later challenged the juvenile court's invocation of his adult sentence, claiming it was contrary to law and void because he had not previously been admitted to a DYS facility as required by R.C. 2152.14(E)(1)(b). *Id.* at ¶ 5.

{¶ 22} On appeal, the Third District held that "the JRC was statutorily not a DYS

facility, but rather was a community corrections facility[.]" *Id.* at ¶ 10. In reaching this conclusion, the court looked at evidence N.G. had submitted regarding DYS and CCF facilities, stating the following:

> Exhibit C was a list of CCFs identified by DYS as providing dispositional alternatives to a DYS facility. Doc. 42. On this list is JRC, where N.G. was placed. JRC was identified as providing programming for sex offenders from Hancock County. *Id.* Exhibit D, on the other hand, lists the juvenile correctional facilities. These were identified as Circleville JCF, Cuyahoga Hills JCF, Indian River JCF, and Scioto JCF. *Id.* CCFs are statutorily defined as "a county or multicounty rehabilitation center for felony delinquents who have been committed to [DYS] and *diverted from care and custody in an institution* and placed in the rehabilitation center pursuant to [R.C. 5139.36(E)]." R.C. 5139.01(A)(14) (emphasis added). The statute also provides that DYS may make referrals to place children in its custody in CCFs in lieu of placing them in a DYS facility. R.C. 5139.36(C)(3)(a), (E)(2). The trial court in its original judgment entry of sentencing recognized the difference between placement in a DYS facility and placement in a CCF. The trial court specifically imposed a DYS commitment, then suspended that commitment to place N.G. in JRC, which is a CCF.

*Id.* As N.G.'s commitment to DYS had been suspended and he had been sent to a CCF, the Third District determined that "[t]he statutory requirements for invoking the adult portion of a blended were not met * * * [and] the sentence invoking the adult portion [was] contrary to law and [was] void." *Id.* at ¶ 12.

{¶ 23} We agree with the Third District's analysis and find that, in the present case, there was not clear and convincing evidence presented that S.I.G. had been committed to a DYS facility. Rather, the record reflects that S.I.G.'s commit to a DYS facility was suspended and S.I.G. was placed in a CCF when he was sent to the BCJRC for sex offender rehabilitation. As S.I.G. had not been admitted to a department of youth services facility and did not have criminal charges pending against him, the requirements of R.C. 2152.14(E)(1)(b) were not met and the adult portion of his SYO sentence could not be

invoked. We therefore sustain S.I.G.'s first assignment of error and vacate the indefinite mandatory prison term of 10 years to life imposed by the juvenile court.

**{¶ 24}** Given our resolution of S.I.G.'s first assignment of error, S.I.G.'s remaining three assignments of error, all of which challenge the juvenile court's imposition of the adult portion of his dispositional sentence, are rendered moot and need not be addressed. *See* App.R. 12(A)(1)(c). The juvenile court's decision invoking the stayed adult portion of S.I.G.'s SYO sentence is reversed and the matter remanded for a dispositional hearing on S.I.G.'s probation violations.

S. POWELL, P.J., and M. POWELL, J., concur.